**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

AUSTIN and GRAYCE MCCOY, )
individually and as parents and next )
friends of K.M., a minor, )
          )
      Plaintiffs, )
          )
v. )      Case No. 24-cv-00263-SH
          )
INDEPENDENT SCHOOL DISTRICT )
NO. 1 OF TULSA COUNTY a/k/a )
TULSA PUBLIC SCHOOLS, )
          )
      Defendant. )

## OPINION AND ORDER

Plaintiffs bring this lawsuit asserting various claims resulting from the sexual harassment and bullying of a middle schooler.[1] Plaintiffs seek damages for both themselves and their minor child. Defendant moves to dismiss the parents' direct, individual claims and argues punitive damages are not available in this case. Plaintiffs agree that punitive damages are not recoverable. The Court further finds that the parents have failed to state an individual federal claim and cannot assert a direct claim for damages under state law. Parents may, however, continue to assert derivative claims under state law for the loss of their child's services and medical expenses incurred or likely to be incurred on behalf of their child while she is a minor.

### Factual Background

The Court derives the following factual allegations from Plaintiffs' petition (ECF No. 2-1) and assumes they are true for purposes of this motion.

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 14.)

K.M. was a student at Will Rogers College Middle School ("Rogers"), which is part of Defendant Independent School District No. 1 of Tulsa County ("TPS").  (*Id.* ¶¶ 11–12.)  In Spring 2022, K.M. began a romantic relationship with T.W., another minor student.  (*Id.* ¶ 14.)  During their relationship, K.M. provided T.W. with nude photographs of herself, which T.W. shared with other students without K.M.'s consent.  (*Id.* ¶¶ 15–16.)  K.M. reported the sexting to the 7th Grade Dean.  (*Id.* ¶ 18.)  During this time, K.M. was frequently marked absent from class.  (*Id.* ¶ 17.)  Plaintiffs Austin and Grayce McCoy ("Parents") communicated the harassment and behavioral issues to administrators at Rogers, requesting a "504 plan" for K.M.[2]  (*Id.* ¶¶ 19–20.)  Rogers indicated it would investigate and handle the matter.  (*Id.* ¶ 21.)

Plaintiffs reiterated their request for a 504 plan the following school year, in October 2022.  (*Id.* ¶ 22.)  That same month, K.M. was hospitalized for mental health treatment.  (*Id.* ¶ 23.)  Following her discharge, K.M. and Parents met with various administrators at Rogers about K.M.'s situation.  (*Id.* ¶¶ 23–24.)  In these meetings Plaintiffs requested a "Safety Plan and Stay Away Order," but their request was denied.  (*Id.* ¶ 24.)  Parents also raised concerns about students' unsupervised access to locker rooms and other non-supervised areas of the school.  (*Id.* ¶ 23.)  During one of these meetings, a school counselor, who was apparently T.W.'s uncle, indicated he would speak with T.W.  (*Id.*)

---

[2] This appears to refer to a plan under section 504 of the Rehabilitation Act of 1973.  *See* 29 U.S.C. § 794; *see also* 34 C.F.R. pt. 104 *et seq.* (implementing regulations by the Department of Education).  Section 504 provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C.A. § 794(a).

As a result of these meetings, Rogers crafted a "Student Success Plan" for K.M. (*Id.* ¶ 24.) In the plan, K.M. identified students who were bullying her and expressed her concern about T.W. while she was at school. (*Id.* ¶¶ 25–26.)

In January 2023, however, T.W. continued to bully and threaten K.M. (*Id.* ¶ 27.) Around this time, T.W. and K.M. had multiple "sexual encounters" in an unsupervised school locker room. (*Id.* ¶ 28.) T.W. choked, kicked, shoved, punched, and slapped K.M. during these encounters. (*Id.*) T.W. recorded some of the incidents, and Plaintiffs believe he shared the recordings with other students. (*Id.* ¶ 30.) Plaintiffs filed a police report after learning of these videos. (*Id.* ¶ 31.) K.M. was again admitted to inpatient treatment for depression and threats of suicide. (*Id.* ¶ 32.) Plaintiffs reported T.W.'s actions to Rogers administrators. (*Id.* ¶ 33.) Still, in February 2023, an administrator allowed K.M. to switch her schedule so she could be in the same class as T.W. (*Id.* ¶¶ 33–34.)

K.M. left Rogers in March 2023. (*Id.* ¶ 35.) Since leaving, she has continued to be "in and out of residential treatment programs" and unable "to participate in a normal adolescence." (*Id.*)

### Procedural Background

Plaintiffs filed suit on May 14, 2024, alleging claims for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681—1689; substantive due process violations under 42 U.S.C. § 1983; and negligence under Oklahoma's Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151—172. (ECF No. 2-1.) TPS has filed a partial motion to dismiss, requesting dismissal of: (1) Parents' direct claims under all three theories[3] and (2) all parties' requests for punitive damages. (ECF No. 10.)

---

[3] Defendant's motion does not seek to dismiss any derivative claims Plaintiffs' may have for medical or other expenses.

3

Plaintiffs concede that punitive damages are not available. (ECF No. 19 at 2.[4]) For reasons explained below, TPS's remaining motion will also be granted as to Parents' direct claims.

## Analysis

### I. Standard of Review

TPS moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 10.) While TPS also raises statutory standing under Title IX (*id.* at 7–8), this is not a matter of subject-matter jurisdiction as Plaintiffs argue (ECF No. 19 at 4). *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (noting that so-called "statutory standing" is a misleading label, as it refers to the absence of a valid cause of action rather than the court's power to adjudicate the case). Regardless, in a facial attack on subject-matter jurisdiction, the Court would accept the allegations in the complaint as true, *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), and apply the same standards as are applicable to a Rule 12(b)(6) motion, *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

To survive a 12(b)(6) motion, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[4] References to page numbers refer to the ECF header.

All such reasonable inferences are resolved in the plaintiff's favor.  *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations and footnotes omitted).

## II.    All Plaintiffs—Demand for Punitive Damages

Because punitive damages are a type of damages, not an underlying claim for relief, *Huggins v. Four Seasons Nursing Ctrs., Inc.*, No. 07-CV-0396 CVEPJC, 2007 WL 3113429, at *2 (N.D. Okla. Oct. 22, 2007), the Court will not "dismiss" claims for punitive damages as TPS requests.  The parties all agree, however, that such damages are not available in this case.  (ECF No. 10 at 5–8; ECF No. 19 at 2.)

As to § 1983 and the GTCA, binding precedent supports this agreement.  *See, e.g.*, *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003) (noting § 1983 bars punitive damage awards against municipal agencies, such as the defendant school district); Okla. Stat. tit. 51, § 154(C) (barring punitive damages against a political subdivision under the GTCA); *id.* § 152(11)(b) (defining "political subdivision" as including a school district). As for Title IX, there does not appear to be binding precedent, but numerous district courts have found punitive damages are not available for Title IX claims.  *See Stevens v. Berryhill Bd. of Educ.*, No. 19-CV-637-WPJ-JFJ, 2024 WL 23352, at *8 (N.D. Okla. Jan. 2, 2024); *Najera v. Indep. Sch. Dist. of Stroud No. 1-54*, 60 F. Supp. 3d 1202, 1208 (W.D. Okla. 2014); *BPS v. Bd. of Trustees*, No. 12-CV-02664-RM-KLM, 2015 WL 5444311, at *18 (D. Colo. Sept. 16, 2015); *Clark v. Newman Univ., Inc.*, No. CV 19-1033-KHV, 2022 WL 4130828, at *11 (D. Kan. Sept. 12, 2022).  Moreover, the Supreme Court—in addressing other Spending Clause statutes—appears to support this reading.  *See*

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216–18 (2022) (recognizing Title IX as one of the "four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds," and noting that such Spending Clause legislation "may be enforced through implied rights of action," but that "[p]unitive damages . . . are not available"); *see also Barnes v. Gorman*, 536 U.S. 181, 185–88 (2002) (discussing the contractual nature of Spending Clause statutes, including those in Title IX, and noting that punitive damages are generally not available for breach of contract).

With the parties in agreement on this issue, the Court will strike the demand for punitive damages in the petition.

### III.    Parents' Claims—Title IX

Parents have failed to state an individual claim under Title IX.

### A.    Claims Under Title IX—Generally

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Title IX includes an implied private right of action that "authorizes private parties to seek monetary damages for intentional violations of Title IX" and "encompasses intentional sex discrimination in the form of a recipient's deliberate indifference to . . . sexual harassment of a student by another student." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (citations omitted). "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Id.* To state a Title IX claim, "a plaintiff must show: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the

6

program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

### B.    Parents' Claims under Title IX

Whether Parents may assert individual claims under Title IX—as opposed to claims on behalf of K.M.—is a question of "statutory standing." *Doe v. Bd. of Trustees*, No. 23-8001, 2024 WL 1085149, at *3 n.4 (10th Cir. Mar. 13, 2024) (unpublished) ("the question whether [parents] can state a cause of action under Title IX is one of statutory, rather than Article III standing").[5]  Assessment of statutory standing requires the court ask "[w]hether a plaintiff comes within 'the zone of interests'" of a statute in order to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127 (cleaned up).  Put differently, the question is whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue . . . ." *Id.* at 128.

Generally, courts have found parents lack statutory standing to assert their own, individual claims under Title IX.[6]  *See, e.g.*, *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[6] Plaintiffs' reliance on *Dipippa v. Union School District* for their Title IX arguments is unpersuasive.  *Dipippa* found that parents of students generally lack standing to assert personal claims under Title IX but could pursue reimbursement for the child's treatment expenses. 819 F. Supp. 2d 435, 446 (W.D. Pa. 2011).  Here, Defendant agrees that Parents can seek reimbursement of medical expenses on behalf of K.M.  (ECF No. 20 at 4.)  *Cf. Haines v. Metro. Gov't*, 32 F. Supp. 2d 991, 1000 (M.D. Tenn. 1998) ("the parents of a child suing under Title IX cannot bring an action to recoup [medical expenses and loss of services] unless suing on behalf of their daughter or son"); *Doe v. Londonderry Sch. Dist.*, 970 F. Supp. 64, 74 n.12, 76 (D.N.H. 1997) (noting parents "are not proper plaintiffs to bring this [Title IX] cause of action in their individual capacities," but accepting, "in principle, the . . . argument that Jane should be able to recover funds expended by her parents on Jane's behalf"), *modified*, 32 F. Supp. 2d 1360 (D.N.H. 1997).

1006, 1009 n.4 (5th Cir. 1996) (parent "does not have standing" as "nothing in the statutory language provides her with a personal claim under title IX"), *overruled on other grounds by Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999); *cf. Bd. of Trustees*, 2024 WL 1085149, at *3 n.4 (Tenth Circuit noting, in dicta, "[p]arents acting in their individual capacity, rather than as a representative of a minor, generally do not state an actionable claim under" Title IX).[7]

Considering the plain language of the statute, the undersigned agrees with these courts and finds Parents lack statutory standing under Title IX. Congress has proscribed discrimination on the basis of sex to prevent the denial of education benefits. 20 U.S.C. § 1681(a). The private cause of action recognized under the statute relates to things like deliberate indifference to sexual harassment of a student by another student. Parents, individually, are outside the zone of interest contemplated by Title IX for these claims.[8] As such, Parents' claims under Title IX are dismissed with prejudice.

---

[7] Various district courts have similarly found parents lack such standing. *See, e.g.*, *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1114 (N.D. Cal. 2013); *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007); *R.L.R. v. Prague Pub. Sch. Dist. I-103*, 838 F. Supp. 1526, 1530 (W.D. Okla. 1993).

[8] Some courts have found parents may have statutory standing to bring retaliation claims. *See, e.g.*, *Doe v. USD No. 237*, No. 16-CV-2801-JWL-TJJ, 2017 WL 3839416, at *8–9 (D. Kan. Sept. 1, 2017); *Bigge v. Dist. Sch. Bd.*, No. 5:13-CV-49-OC-10PRL, 2015 WL 1138472, at *11 (M.D. Fla. Mar. 13, 2015); *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 376 (W.D. Pa. 2008). It is not clear whether the Tenth Circuit would recognize such an action. *See Rossley v. Drake Univ.*, 958 F.3d 679, 684 (8th Cir. 2020) (noting in retaliation case, "if the action taken 'on the basis of sex' against the person did not exclude, deny, or subject the person to discrimination under an education program or activity, then the action cannot be brought under § 1681(a)") *cited with approval in Bd. of Trustees*, 2024 WL 1085149, at *3 n.4. The Court need not decide this issue, however, as the Petition alleges only retaliation against K.M. (ECF No. 2-1 ¶ 43), not Parents.

## IV.    Section 1983

Parents' claims under § 1983 are similarly deficient.  TPS argues these claims fail for a number of reasons, including that "[n]owhere in the Complaint do the McCoys individually identify which one of their constitutionally protect[ed] rights were violated by way of a School District policy."  (ECF No. 10 at 8–9.)  Instead, TPS notes that the claims are focused on rights "*surrounding minor K.M.*, as a student . . . ."  (*Id.* at 9.) Plaintiffs do not respond to this argument.  (ECF No. 19.)  For reasons explained below, the Court agrees that Parents' claims under § 1983 should be dismissed.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To state a *Monell* claim for municipal liability, "a plaintiff must first show a municipal policy or custom" and then "show that the municipality was deliberately indifferent to constitutional violations that were the obvious consequences of its policy."  *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Missing from Plaintiffs' petition is any allegation that Parents' constitutional rights were violated.

Section 1983 "creates no substantive civil rights, only a procedural mechanism for enforcing them."  *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (internal quotations omitted).  Without any assertion that their constitutional rights were violated, Parents have failed to state a claim.  *See, e.g.*, *Sutherlin v. Indep. Sch. Dist. No. 40*, 960 F. Supp. 2d 1254, 1265 (N.D. Okla. 2013) ("there can be no municipal liability without a constitutional violation"); *I.G. ex rel. Grunspan v. Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 998 (D. Colo. 2020) ("A plaintiff may not bring a § 1983 claim that is derivative

of another person's § 1983 claim."). This requirement has been affirmed in the context of parents asserting § 1983 claims based on alleged violations of their child's constitutional rights. *See, e.g.*, *Doe v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-00814, 2024 WL 1329917, at *9 (E.D. Tex. Mar. 27, 2024) (requiring the parents "allege some violation of their personal rights, not simply a violation of [their children's] personal rights"); *Davis v. Folsom Cordova Unified Sch. Dist.*, No. 2:15-CV-1714-GEB-KJN, 2015 WL 6821278, at *3 (E.D. Cal. Nov. 6, 2015) ("the fundamental problem with plaintiff's claims under 42 U.S.C. § 1983 here is that plaintiff fails to allege how any of the defendants deprived *plaintiff himself* of a right secured by the Constitution or laws of the United States"), *dismissal aff'd by* 674 F. App'x 715 (9th Cir. 2017).

Here, the only constitutional right Plaintiffs allege to be violated was K.M.'s "constitutionally protected Fourteenth Amendment interest in bodily integrity and security." (ECF No. 2-1 ¶ 50.) As such, Parents' claims under § 1983 are dismissed with prejudice.

## V.  Negligence Claims

TPS next argues that Parents' direct negligence claims, brought pursuant to the Oklahoma GTCA, should be dismissed, as "[n]o legal duty was owed to [the] McCoy's individually nor was any breached by the School District." (ECF No. 10 at 11.) Plaintiffs maintain TPS "assumed responsibility for K.M., as a student," and, in doing so, "owed a legal duty to K.M.'s parents." (ECF No. 19 at 10.) As explained below, the Court disagrees such a duty was owed.

### A.  The GTCA

In Oklahoma, the "GTCA is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Tuffy's, Inc. v. Oklahoma City*, 2009 OK 4, ¶ 7, 212 P.3d 1158, 1163; *see also* Okla. Stat. tit. 51, § 153(B). "Governmental immunity of a

subdivision of the State is waived only to the extent and in the manner provided in the GTCA." *Teeter v. City of Edmond*, 2004 OK 5, ¶ 9, 85 P.3d 817, 820.  A school district is a "political subdivision" under the statute.  Okla. Stat. tit. 51, § 152(11)(b).  Pursuant to the GTCA,

> a political subdivision shall be liable for loss resulting from its torts or the torts of its employees . . . subject to the limitations and exceptions specified in the [GTCA] and only where the . . . political subdivision, if a private person or entity, would be liable for money damages under the laws of this state.

Okla. Stat. tit., 51 § 153(A).  TPS does not argue any exceptions apply[9] and does not contend Plaintiffs have failed to comply with the procedural requirements of the GTCA. (ECF No. 10.)  Instead, TPS attacks Parents' ability to articulate liability "under the laws of this state."  Specifically, TPS argues Parents' direct claims fail under the first prong of Oklahoma's negligence analysis.

## B.    Negligence and the Duty Owed to Parents

### 1.    Oklahoma Law—Duty of Care

Negligence under Oklahoma law requires the plaintiff to "show duty, breach, and causation," specifically "(1) a duty owed by defendant to protect plaintiff from injury, (2) defendant's failure to properly exercise or perform that duty, and (3) defendant's failure to exercise his duty of care proximately caused plaintiff's injury."  *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 624 (10th Cir. 2018) (citing *John v. Saint Francis Hosp., Inc.*, 2017 OK 81, ¶ 32, 405 P.3d 681, 691).  The operative question here is whether TPS owed Parents a duty of care.

"Whether a duty exists is a threshold legal question for the court" and depends on

---

[9] Exceptions to the waiver of immunity are found at Okla. Stat. tit. 51, § 155.

"the relationship between the parties and the general risks involved in the common undertaking." *Id.* at 624–25 (internal quotations omitted). Duty arises "whenever the circumstances place [one] in a position towards [another] such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 13, 160 P.3d 959, 964. "The most important consideration is foreseeability of harm to the plaintiff." *McGehee*, 908 F.3d at 625 (internal quotations omitted). Other factors may include the "degree of certainty of harm to the plaintiff, moral blame attached to defendant's conduct, need to prevent future harm, extent of the burden to the defendant and consequences to the community of imposing the duty on defendant, and availability of insurance for the risk involved." *Id.* at 625 n.3 (quoting *Lowery*). Yet—

> A foreseeable risk of harm alone is not enough to establish a duty of care under Oklahoma law. The plaintiff must be "foreseeably endangered by defendant's conduct *with respect to all risks that make the conduct unreasonably dangerous*." Oklahoma courts use this formulation to determine the "zone of risk." Within that zone, a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous."

*Id.* (citations and footnote omitted). Under this standard, "if a risk of harm was foreseeable but the risk did not make the defendant's conduct unreasonably dangerous, no duty of care will be found." *Id.* at 626.

Generally, under Oklahoma law, students attending a middle school are within the "zone of risk" of that school's unreasonably dangerous or negligent conduct such that they are owed a duty. *See, e.g.*, *J.W. v. Indep. Sch. Dist. No. 10*, 2021 OK CIV APP 34, ¶¶ 72–74, 500 P.3d 649, 666. What is less clear is whether that duty extends beyond the school-student relationship and encompasses a duty of care toward the student's parents.

### 2.      Predicting Oklahoma Law

When sitting in diversity and applying state law, a "federal court must follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007).  Here, the Oklahoma Supreme Court has not decided whether Oklahoma would extend a school's duty of care to the parents of its students. Lacking such a controlling decision, the Court must attempt to predict what that court would do and may seek guidance from (1) decisions rendered by the state's lower courts, (2) appellate decisions in other states with similar legal principles, (3) decisions of federal district courts interpreting the state law in question, and (4) the general weight and trend of authority in the relevant area of law.  *Id.* at 666.

### 3.      Cases Addressing the Duty Owed Parents

Parents refer only to out-of-state cases in support of their assertion that they are owed a duty.[10]  (ECF No. 19 at 10.)  The Court finds that these non-Oklahoma cases point in different directions on this issue and, therefore, it cannot discern a general weight and trend of authority.

A number of courts have found no authority for the proposition that schools have a duty to parents.  *See, e.g.*, *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, No. 14-CV-8093 (KMK), 2016 WL 1274587, at \*14 (S.D.N.Y. Mar. 31, 2016) ("This Court . . . has found no authority suggesting the existence of any duty owed by a school district and its administrators to a student's parents."); *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 226 n.32 (D.N.H. 2009) (parents' negligence claims "fail because the defendants

---

[10] Plaintiffs also reference Oklahoma's requirement that parents send their student to a public, private, or other school.  (*Id.* (citing Okla. Stat. tit. 70, § 10-105(A)).)  However, Plaintiffs fail to cite any law indicating this statute imposes a duty of care owed by schools to parents.

owed their duty of care to [student], not to her parents" (citations omitted)); *Turner ex rel. Turner v. N. Panola Sch. Dist.*, No. 2:06-CV-0098-SAA, 2007 WL 2359773, at *4 (N.D. Miss. Aug. 14, 2007) (while it was "clear that school has a duty to provide a safe, school environment for students . . . the court holds that the school district did not owe any such duty to either [parent]").

Other courts have found such a duty. *See, e.g.*, *Munn v. Hotchkiss Sch.*, 165 A.3d 1167, 1178 (Conn. 2017) ("The duty a school owes 'to students and their parents is, on a general level, a duty to take whatever precautions are necessary reasonably to ensure the safety and welfare of the children entrusted to its custody and control against harm that the [school] anticipates, or reasonably should anticipate.'" (quoting *Doe Parents No. 1 v. State Dep't of Educ.*, 58 P.3d 545, 591 (Haw. 2002)));[11] *Posey v. San Francisco Unified Sch. Dist.*, No. 23-CV-02626-JSC, 2023 WL 8420895, at *4 (N.D. Cal. Dec. 4, 2023) ("Parents can bring claims as direct victims of a school's negligent acts or failure to act if the school preempted or usurped 'the parental prerogative to take measures to protect the child' by making a conscious decision not to inform parents of a known danger." (quoting *Steven F. v. Anaheim Union High Sch. Dist.*, 6 Cal. Rptr. 3d 105, 113 (Cal. Ct. App. 2003)));[12] *K.G. ex rel. Ruch v. Smith*, 178 N.E.3d 300, 312 (Ind. 2021) ("based on the

---

[11] The court in *Doe Parents No. 1* explicitly found the Department of Education's "duty ran, not only to [the minor students], but to their respective parents, because it was reasonably foreseeable that both the students and their parents would suffer emotional distress in the event that [their teacher] molested the students." 58 P.3d at 585.

[12] California courts have limited the duty owed parents to circumstances where the parent may be described as a "direct" victim of the school's negligence and not when injury to a third party collaterally results in the parent's emotional distress. *Ramirez v. Escondido Unified Sch. Dist.*, No. 11CV1823 DMS (BGS), 2013 WL 12191986, at *8 (S.D. Cal. Apr. 8, 2013).

parties' relationship, the foreseeability of sexual molestation, and public-policy considerations[,] the School owed a duty of care" to the parent).

### 4.   Oklahoma's Foreseeability Test

In predicting whether Oklahoma would recognize a school's duty to parents, the Court will, instead, start with the test for determining legal duties outlined by the Oklahoma Supreme Court in cases like *Lowery*, and synthesized by the Tenth Circuit in *McGehee*.

The most important question in determining whether a duty exists is the foreseeability of the harm to the plaintiff.  Here, the plaintiffs are two parents of a child attending a TPS middle school.  Taking the facts outlined above as true, the undersigned does not find it reasonably foreseeable that TPS would necessarily recognize that if the school did not act with ordinary care toward <u>K.M.</u>, it would "cause danger of injury" to <u>Parents</u>.  The danger of injury in a school's unreasonable actions creates a zone of risk that immediately extends to the students in its care.  *See Brewer v. Murray*, 2012 OK CIV APP 109, 292 P.3d 41, 49 n.3 (noting that a school often owes students a duty—such as a duty to supervise—based on "the school . . . standing *in loco parentis* or partially in place of the student's parents" such that it is acting as a temporary guardian of the child).  It is not so foreseeable, however, that injury would lie in the parents of those children.

Moreover, even if the Court accepts that harm to parents <u>is</u> foreseeable, "[a] foreseeable risk of harm alone is not enough to establish a duty of care under Oklahoma law." *McGehee*, 908 F.3d at 625.  Parents must be foreseeably endangered by the conduct with respect to all risks that make the conduct unreasonably dangerous.  Here, based on the allegations in Plaintiffs' petition, TPS's conduct might be classified as creating unreasonable risk through inadequate implementation of plans aimed at student success

(such as 504 plans), inadequate supervision of school facilities, and inattentive administration of classroom schedules—all leading to K.M. being subject to bullying and sexual harassment and assault by other students. The risks of harm that would make this conduct unreasonable all land on K.M. To cast Parents as within the zone of risk of the inadequate administration and monitoring at issue would, in this Court's opinion, stretch the concept of duty too far.[13]

### 5.  Analogous Situations

A review of how Oklahoma treats a parent's ability to recover for their children's harm in other circumstances further indicates the Oklahoma Supreme Court would not recognize a school's duty of care to parents here.

For example, when considering claims for negligent infliction of emotional distress, the Oklahoma Supreme Court has found parents may not recover damages for mental anguish when they are not directly involved in the accident at issue. *See Ridings v. Maze*, 2018 OK 18, 414 P.3d 835. In *Ridings*, parents brought suit—personally and as representatives of their minor children—against Norman Public Schools when their child was struck by a car upon exiting the bus. *Id.* ¶ 2, at 837. The parents witnessed the accident from the window of their home. *Id.* As Parents do here, they claimed damages based on their own emotional distress. *Id.*

Noting the three requirements of negligence in Oklahoma, the *Ridings* Court stated that "negligent causing of emotional distress is not an independent tort, but is in effect the tort of negligence." *Id.* ¶ 6. "To recover for emotional distress under Oklahoma

---

[13] Other factors acknowledged by the *McGehee* court counsel against finding that Parents were owed a duty of care. The degree of certainty of harm to Parents is relatively low, and the burden to TPS and consequences to the community of imposing a duty of care that runs from schools to parents is substantial.

law, a plaintiff must be a direct victim rather than a bystander." *Id.* ¶ 7 (cleaned up).
"Direct victims are those individuals who are directly physically involved in the accident,
but whose emotional distress results from the suffering of another," whereas bystanders
"are those individuals who are not directly involved in the accident, but are seeking
damages for emotional distress resulting from witnessing the injury of another." *Id.* ¶ 7,
at 838 (internal quotations omitted). The Court found parents were required "to establish
they were a direct victim in order to recover for emotional distress," and dismissed their
claims when it determined they were merely bystanders. *Id.* ¶ 12, at 839.

While the Court is aware of the differences in the scenario described in *Ridings*, it
finds the comparison helpful. Recognizing that negligent infliction of emotional distress
is simply a claim for negligence—one requiring, among other things, a duty of care owed
to the plaintiff—the Oklahoma Supreme Court declined to find parents could recover on
such claims when they witnessed the inciting negligent incident (the car accident) and,
understandably, suffered emotional distress as a result. Plaintiffs have given the under-
signed no reason to believe Oklahoma courts would find differently in this scenario. The
"mental and emotional consequences" suffered by Parents are understandably a result of
their child's suffering. But that has not, in the past, been enough for Oklahoma courts to
stretch the duty of care beyond the student and find such a duty owed to parents (or other
bystanders) when they are not directly involved in the negligent conduct. Though not a
one-to-one comparison, the Court finds this supports a prediction that Oklahoma would
not recognize a duty here.

Similarly, the undersigned finds consideration of damages a parent <u>may</u> recover
based on injury to their child to be persuasive as well. While a parent cannot generally
receive damages for their own emotional distress based on their child's injury, Oklahoma

law has not left them without an avenue of recovery.  Oklahoma recognizes a "parent's right of action for consequential damages based on loss of services and on the expenses incurred as a result of the child's injury," a claim "distinct from the child's right of action for his or her own injuries." *Indep. Sch. Dist. I-29 v. Crawford*, 1984 OK 62, ¶ 9, 688 P.2d 1291, 1293–94, *superseded by statute on other grounds*, 1984 Okla. Sess. Laws ch. 226 § 2, *as recognized in Carlson v. City of Broken Arrow*, 1992 OK 163, 844 P.2d 152.  Such recovery includes the recovery of medical expenses incurred on behalf of the child.  *See Swain v. United Auto. Ins. Co.*, 2024 OK CIV APP 15, ¶ 17, 550 P.3d 351, 359 (but noting this right "depends on the right of the child to recover for his injuries" (internal quotations omitted)).  The right has long been recognized as one being held by the parents based on injury to their child.  *See* Restatement (Second) of Torts § 703 (1977) (when party is liable to minor child for injury, they are also subject to liability to "the parent who is entitled to the child's services for any resulting loss of services" and to "the parent who is under a legal duty to furnish medical treatment for any expenses reasonably incurred or likely to be incurred"); 32 A.L.R.2d 1060 § 1[b] (Originally published in 1953) (when a parent's child is negligently injured by another, "in the usual situation the item of damages for loss of services or earnings of an injured minor or the expenses of treating his injuries belong to the parents rather than the child" (footnotes omitted)).

Because this right to recovery is "dependent" on the right of the child to recover in their own claims, the Court finds the concept supports there being no separate duty owed to Parents.  While their cause of action for medical expenses might be an "independent" claim, its success is dependent on the success of their child's, and is, therefore,

18

derivative.[14]  The damages parents may recover are not based explicitly on any duty owed to them, but on a duty owed to their child.

Considering the above, the Court concludes TPS owed Parents no duty of care and, therefore, their direct claims for negligence are dismissed to the extent Parents seek to recover for their own personal, non-derivative damages, including their "frustration, embarrassment, and other mental and emotional consequences" (ECF No. 2-1 ¶ 80). These claims will be dismissed with prejudice.

However, as noted above, Parents may continue to maintain their derivative claim for damages they have incurred due to their loss of K.M.'s services or due to expenses they have (or will) incur in providing medical treatment to K.M. in her minority.

## VI.    Loss of Consortium

Lastly, in their response brief, Parents assert they have sought "damages for filial loss of consortium" for the injury to their minor daughter.  (ECF No. 19 at 11–13.)  Their petition, however, does not state such a claim.  (*See* ECF No. 2-1.)

Oklahoma appears to treat loss of consortium due to injury as a cause of action, not merely a category of damages.[15]  *See, e.g.*, *Williams v. Hook*, 1990 OK 136, ¶ 1, 804 P.2d 1131, 1132 (recognizing "cause of action for the permanent loss of parental

---

[14] Loss of consortium claims function in a similar fashion.  To recover on a loss of consortium claim "require[s] proof that defendant committed a tort against the injured or deceased spouse, parent, or child . . . ."  Restatement (Third) of Torts: Remedies § 25 (2023); *see also Segroves ex rel. Segroves v. Hartson*, 776 F. Supp. 544, 547 (N.D. Okla. 1991) ("it is clear that a loss of consortium claim is derivative of the main claim for personal injuries" in its "requirement that [the harmed party] establish liability" before the consortium claim is viable).

[15] Where the plaintiff is asserting wrongful death, however, it appears that loss of consortium is treated as a type of damages.  *See* Okla. Stat. tit. 12, § 1053(B)(2); *id.* § 1055; *see also* OUJI Nos. 8.1–8.2.

consortium when a parent is negligently injured by a third party" (footnote omitted)); *see also* Oklahoma Uniform Jury Instruction ("OUJI") Nos. 4.5, 4.7 (treating spousal and parental loss of consortium as separate claims).

Plaintiffs cite no Oklahoma cases recognizing a parent's claim for loss of consortium based on injury to a minor child. Instead, Plaintiffs look to other state courts and to Oklahoma's recognition that a child can recover for the permanent disablement of their parent. (ECF No. 19 at 11–12.) It is not at all clear, however, that Oklahoma would recognize a new cause of action for parents based on the permanent loss of consortium with their child. Regardless, Parents have alleged no facts indicating that K.M. "is in a state which equates death." *Williams*, ¶ 11, 804 P.2d at 1136.

Even if a claim for injury-based loss of filial consortium existed in Oklahoma, Parents have not stated such a claim. *See Does 1-13 v. Mount Saint Mary High Sch. Corp.*, No. CIV-22-992-R, 2023 WL 5352924, at *6 (W.D. Okla. Aug. 21, 2023). Generally, "a claim . . . that is not adequately raised in the complaint will not be considered." *Fuqua v. Lindsey Mgmt. Co.*, 321 F. App'x 732, 734 (10th Cir. 2009). And were the Court to treat this newly raised claim as a request to amend their petition, Plaintiffs "never sought leave to file an amended complaint, . . . never asked that their response to [the motion to dismiss] be treated as a request to amend, and . . . never filed an amended complaint." *Id.* at 735. If Plaintiffs wish to amend their petition, they may file a motion.

## Conclusion

IT IS THEREFORE ORDERED that the *Combined Motion to Dismiss of Defendant Independent School District No. 1 of Tulsa County, Oklahoma* (ECF No. 10) is GRANTED. All Plaintiffs' requests for punitive damages are STRICKEN. Austin and Grayce McCoy's individual claims under Title IX and § 1983 are DISMISSED WITH

PREJUDICE.  Austin and Grayce McCoy's direct individual claims under the GTCA are DISMISSED WITH PREJUDICE.  Austin and Grayce McCoy retain their derivative claims under the GTCA for loss of services and medical expenses based on injuries to their minor child, K.M.

ORDERED this 24th day of January, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT